BOSKOWITZ et al. v. BEHR.

(Supreme Court, General Term, First Department. May 18, 1894.)

NEGOTIABLE INSTRUMENTS — AGREEMENT NOT TO HOLD PARTY LIABLE.

In an action on a note, a verdict for defendant is against the weight of evidence where it appears that the note was signed by defendant's firm, and by defendant and his copartners individually, that it was given for machinery sold to defendant's partners before the formation of the partnership, and turned over to the firm with the knowledge of defendant that it had not been paid for, though defendant testifies that plaintiff asked him to sign the note as a mere matter of form, and stated that defendant would not be held liable on it.

Appeal from circuit court, New York county.

Action by Ignatz Boskowitz and others against Robert J. Behr for price of goods sold and delivered. From a judgment entered on a verdict in favor of defendant, and from an order denying a motion for a new trial, plaintiffs appeal. Reversed.

Argued before O'BRIEN, P. J., and FOLLETT and PARKER, JJ.

Edmond Wise, for appellants.

James Moffett, for respondent.

PARKER, J. Plaintiffs sold and delivered to Reichard & Beltzer machinery at an agreed price of $1,606.83. Subsequently, Reichard & Beltzer formed a partnership with Robert J. Behr, this defendant, under the firm name of Robert J. Behr & Co., the machinery already mentioned, together with other partnership effects of the firm of Reichard & Beltzer, becoming the property of the new firm. There-

after plaintiffs obtained a note for the contract price of the machinery, bearing the firm name, and the signature of each of the individual members of the new firm, as makers. Not denying any of the facts so far as stated, the defendant insisted that there could be no recovery against him because of his testimony that his signature to the note was induced by the assurances of one of the plaintiffs that there would be no liability on his part,—that they would not look to him for the money. He testified, in part, as follows:

"When I came to the office, after being asked by Mr. Beltzer to call over to New York, that Mr. Boskowitz wanted to see me, I went to New York, and went into Mr. Boskowitz's office, and asked Mr. Boskowitz what he wanted to see me about, and he said: 'I want you to sign this note.' I stated to Mr. Boskowitz that I had nothing to do with that note, because I didn't owe h'm anything. That was Mr. Adolph Boskowitz. He said: 'You needn't be afraid to sign that note. I won't look to you for the money. I only want to show that these people are with you.' And of course when he said that I signed the note, not thinking I would hold myself responsible for that amount of money on the note, because the bill was contracted on these people long before I went into partnership with them, and unknown to me, and this note only came up about the latter part of April, and I went into partnership the 1st of April. Q. After you went into copartnership with these people,—after the 1st of April,—did they bring this note, or either of these partners of yours bring this note, to you, and show it to you, after the partnership was commenced? A. Yes; the latter part of April,—about a month after. Q. How came you to go to Mr. Boskowitz's office? The Court: He has told that one of his partners asked him to go. Q. Did Mr. Boskowitz say anything about your assuming liability on this note? (Objected to. Objection overruled. Exception.) A. Mr. Boskowitz said— When he asked me to sign the note, I told him that I didn't owe him anything; so Mr. Boskowitz says: 'I know you don't, but I simply want you to sign this note to show that these people are with you, and I can look to them. You need not be afraid. We won't hold you responsible for it.' And of course I signed it to oblige him. I signed it on that statement of his."

Defendant's statement of what took place, whether so intended or not, brings the case within the rule of Bank v. Colwell (Sup.) 10 N. Y. Supp. 864, and justifies the submission made to the jury. Curiously enough, the jury, in effect, found that they believed defendant's story. Whether the unfortunate result of the partnership, so far as the defendant was concerned, considered in connection with the fact that the plaintiffs had already obtained the avails of the partnership property under a judgment obtained against defendant's partners, helped to persuade the verdict, we cannot, of course, know; but certain it is that their verdict was against the weight of evidence. We shall not attempt to support this assertion by an extended review of the events of the trial. Defendant's testimony stands alone, unsupported by even a single corroborating circumstance. It is confronted by the note bearing defendant's signature and the firm name, also subscribed by him; the books of the plaintiffs, showing the closing of the original account, and the opening of another against the new firm; the fact that the machinery was turned over to the new partnership, and used by them, with knowledge on the part of the defendant that it had not been paid for, and that the note was given to secure the indebtedness; the testimony of one of the plaintiffs, who not only denied defendant's story, but stated the circumstances under which the note was signed by

the defendant; and the evidence of Beltzer, the former partner of defendant, who not only said that the defendant understood, when the partnership was formed, that the machinery was yet to be paid for, but that he (Behr) told the witness and Reichard to sign the note, which being done, he took it, remarking that he would sign it, and give it to the plaintiffs. The exception taken to the refusal to set aside the verdict because against the weight of evidence was well taken. The judgment should be reversed, and a new trial granted, with costs to the appellants, to abide the event. All concur.